1    ROBERT H. PLATT (State Bar No. 108533)
     rplatt@manatt.com
2    MARK S. LEE (State Bar No. 094103)
     mlee@manatt.com
3    SETH REAGAN (State Bar No. 279368)
     sreagan@manatt.com
4    MANATT, PHELPS & PHILLIPS, LLP
     11355 West Olympic Boulevard
5    Los Angeles, California 90064-1614
     Telephone:   (310) 312-4000
6    Facsimile:   (310) 312-4224

7    *Attorneys for Plaintiff*
     AEREO, INC.

8

9                   UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12   AEREO, INC., a New York          Case No. CV 13-01612 PSG (AJWx)
     corporation,
13                                     **EX PARTE APPLICATION FOR
                   Plaintiff,          TEMPORARY RESTRAINING
14                                     ORDER AND ORDER TO SHOW
            vs.                        CAUSE RE A PRELIMINARY
15                                     INJUNCTION; MEMORANDUM
     FILMON.COM, INC., a Delaware      OF POINTS AND AUTHORITIES
16   corporation; ALKIVIADES DAVID     AND DECLARATIONS OF
     a/k/a ALKI DAVID, an individual;  CHAITANYA "CHET" KANOJIA
17   and DOES 1 through 10, inclusive, AND MARK S. LEE IN SUPPORT
                                       THEREOF**
18                 Defendants.
                                       Date:   March 7, 2013
19                                     Place:  Courtroom of the Hon.
                                               Phillip S. Gutierrez
20

21

22          TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

23          PLEASE TAKE NOTICE that plaintiff Aereo, Inc. ("Aereo"), applies

24   ex parte for a temporary restraining order and order to show cause for a preliminary

25   injunction barring Defendants FilmOn.Com, Inc., Alkiviades David, a/k/a Alki

26   David, and anyone acting on their behalf from using "Aero," "Aero.tv," or any

27   other confusingly similar variant of Plaintiff's trademark "Aereo" to operate

28   Defendants' commercial websites, promote Defendants' business, or in any other

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

307025741.3

manner infringe Aereo's trademark rights.

This Application is made pursuant to Federal Rule of Civil Procedure 65 on the grounds that Defendants have, without Aereo's permission, used "Aero" and "Aero.tv" to attract and divert consumers to Defendants' website, attempt to create an association with Aereo where none exists and otherwise promote their business, causing irreparable harm to Aereo.

This Application is based on the Complaint on file herein, the concurrently filed Memorandum of Points and Authorities, and the Declarations of Chaitanya "Chet" Kanojia and Mark S. Lee and accompanying exhibits attached thereto, upon all other pleadings and papers on file herein, of which the Court is respectfully requested to take judicial notice, and upon such other and further evidence and things as may be presented at any hearing on this Application.

Dated:  March 7, 2013

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT
MARK S. LEE
SETH REAGAN


By:  /s/  Robert H. Platt
     Robert H. Platt
     *Attorneys for Plaintiff*
     Aereo, Inc.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

INTRODUCTION .............................................................................................. 1

STATEMENT OF FACTS ................................................................................. 2

    A.    Plaintiff Aereo ........................................................................... 2

    B.    Aereo's Marketing Efforts ......................................................... 3

    C.    Defendants Alki David and Filmon.com ................................... 5

    D.    Defendants' Infringing Conduct Begins .................................... 6

    E.    Plaintiff's Request Defendants To Correct Their Corporate
        Name ......................................................................................... 6

    F.    Defendants Embark On Their Scheme To Confuse The Public .......... 7

    G.    Defendants' Aero.tv Service ...................................................... 7

    H.    Defendants' Lack of Consent .................................................... 8

    I.    Plaintiff's Irreparable Harm ...................................................... 8

ARGUMENT ..................................................................................................... 9

I      DEFENDANTS SHOULD BE ENJOINED FROM  INFRINGING
      ON AEREO'S TRADEMARK RIGHTS ............................................. 9

    A.    Aereo Is Likely To Prevail On The Merits Of Its Trademark
        Infringement And False Association Claims ........................... 19

        1.    Defendants' Conduct Is Intentional ......................... 10

        2.    Plaintiff's Marks Are Strong .................................... 11

        3.    Defendants Are Using A Name Confusingly Similar To
            Aereo's Mark ............................................................ 12

        4.    The Good And Services Are Related ........................ 13

        5.    The Same Marketing Channels Are Used ................. 13

        6.    The Degree Of Consumer Care Favors A Finding Of
            Likely Confusion ...................................................... 14

        7.    Actual Confusion Is Not Needed .............................. 15

        8.    The Parties Are Already Operating In The Same Or
            Similar Product Lines ............................................... 15

        9.    Under The Anti-Dissection Doctrine, Defendants Cannot
            Acquire Rights In The Term "Aero" From A Licensor
            Who Uses Only The "Hauppauge WinTV Aero-M"
            Product Name ........................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

**TABLE OF CONTENTS**
**(continued)**

Page

3

B.      Plaintiff Will Suffer Irreparable Harm If An Injunction Does
        Not Issue ........................................................................................... 18

4

        1.      Irreparable Harm Should Be Presumed .................................. 18

5

        2.      Actual Harm Will Continue Unless An Injunction Issues ...... 18

6

C.      The Balance Of Hardships Favors Plaintiff ...................................... 19

D.      The Public Interest Favors An Injunction ......................................... 20

7

II      THIS COURT SHOULD IMMEDIATELY RESTRAIN

8

        DEFENDANTS FROM VIOLATING PLAINTIFF'S RIGHTS ................ 21

CONCLUSION ............................................................................................... 22

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*,
   944 F.2d 1446 (9th Cir. 1991)................................................................ 11

5

*American Broadcasting Companies, Inc. et al. v. Aereo, Inc.*,
   874 F.Supp.2d 373 (S.D.N.Y. 2012)........................................................ 4

6

7

*Applied Info. Sciences Corp. v. eBay, Inc.*,
   511 F.3d 966 (9th Cir. 2007).................................................................. 9

8

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*,
   457 F.3d 1062 (9th Cir. 2006)................................................................ 15

9

*Barry Diller v. Barry Driller, Inc.*,
   2012 WL 4044732 (C.D.Cal. September 10, 2012)........................... passim

10

*Brookfield Communications, Inc. v. West Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999)................................................. 10, 12, 14, 18

11

12

*Cadence Design Sys. v. Avant Corp.*,
   125 F.3d 824 (9th Cir. 1997).................................................................. 20

13

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
   10 CIV. 7532 NRB (S.D.N.Y. Nov. 22, 2010). (Lee Decl. ¶ 2; Exh. 9.)............... 5

14

*China Healthways Institute, Inc. v. Wang*,
   491 F.Ed 1337 ..................................................................................... 16

15

16

*Consolidated Cigar Corp. v. Monte Cristi De Tabacos*,
   58 F.Supp.2d 188 (S.D.N.Y 1999.)........................................................ 12

17

*Corning Glass Works v. Jeannette Glass Co.*,
   308 F.Supp. 1321 (S.D.N.Y. 1970), *aff'd* ............................................... 20

18

19

*CytoSport, Inc. v. Vital Pharms.*,
   348 Fed.Appx. 288 (9th Cir. 2009)........................................................ 18

20

*CytoSport v. Vital Pharms., Inc.*,
   617 F.Supp.2d 1051 (E.D. Cal. 2009).................................................... 18

21

22

*Dr. Seuss Enterprises, LP v. Penguin Books USA, Inc.*,
   109 F.3d 1394 (9th Cir. 1997)........................................................... 13, 15

23

*DreamWerks Prod. Group, Inc. v. SKG Studio*,
   142 F. 3d 1127 (9th Cir. 1998).......................................................... 10, 13

24

*eBay Inc. v. Merc Exchange LLC*,
   547 U.S. 388 (2006)............................................................................. 18

25

26

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d (9th Cir. 2002)........................................................................ 13

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Fox Television Stations, Inc. v. BarryDriller Content Systems, PLC,*
__F.Supp.2d__, 2012 WL 6784498 (C.D. Cal. Dec. 27, 2012) ............................................ 5, 6

*Goto.com, Inc. v. Walt Disney Co.,*
202 F.3d 1199 (9th Cir. 2000) .......................................................................................... 3

*Interstellar Starship Services, Ltd. v. Epix, Inc.,*
304 F.3d 936 (9th Cir. 2002) .......................................................................................... 13

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.,*
2013 WL 655314 (C.D. Cal. Feb. 21, 2013) .................................................................. 16

*M2 Software, Inv. V. Madacy Entertainment,*
421 F.3d 1073 (9th Cir. 2005) ........................................................................................ 11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
571 F.3d 873 (9th Cir. 2009) ...................................................................................... 9, 18

*Miss World (UK) Limited v. Mrs. Am. Pageants, Inc.,*
856 F.2d 1445 (9th Cir. 1998) ........................................................................................ 12

*Monster, Inc. v. Dolby Laboratories Licensing Corp.,*
2013 WL 367160 (N.D. Cal. Jan. 29, 2013) .................................................................. 16

*Official Airline Guides, Inc. v. Goss,*
6 F.3d 1385 (9th Cir. 1993) ............................................................................................ 16

*Perfect 10, Inc. v. Google, Inc.,*
653 F.3d 976 (9th Cir. 2011) .......................................................................................... 18

*Playmakers, LLC v. ESPN, Inc.,*
297 F.Supp.2d 1277 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004) ...................... 16

*Power Balance LLC v. Power Force LLC,*
2010 WL 5174957 (C.D. Cal. 2010) ................................................................................ 9

*Seed Services, Inc., v. Winsor Grain, Inc.*
868 F.Supp.3d ................................................................................................................. 17

*Seed Services, Inc. v. Winsor Grain, Inc.,*
*supra*. 868 F.Supp.2d ................................................................................................. 19, 20

*Surfvivor Media, Inc. v. Survivor Productions,*
406 F.3d 625 (9th Cir. 2005) .......................................................................................... 14

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
505 U.S. 763 (1992) ...................................................................................................... 10

*Waits v. Frito-Lay, Inc.,*
*supra*, 978 F.2d ........................................................................................................... 10

*Winter v. Natural Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ...................................................................................................... 9, 18

# TABLE OF AUTHORITIES
## (continued)

**Page**

### STATUTES

15 U.S.C. § 1114 .................................................................................................. 9, 10

15 U.S.C. § 1125(a) ................................................................................................. 10

### OTHER AUTHORITIES

http://www.2.technologyreview.com/tr50/2013 ............................................... 5

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
   § 23:57 (4th ed.) .............................................................................................. 17

*The Wall Street Journal*,
   July 18, 2012 ..................................................................................................... 5

*Time* magazine,
   Sept. 18, 2012 ....................................................................................................

### RULES

Fed.R.Civ.P. 65(b) ................................................................................................. 21

Federal Rule of Civil Procedure 65 ..................................................................... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Aereo, Inc. ("Aereo"), is a very well-known company that offers its consumers technology by which they can record and watch television on Internet connected devices using remotely located equipment, including an individual antenna and DVR. Since its official launch in February 2012, Aereo has garnered very substantial critical praise for its technology (including articles in *The Wall Street Journal* and *The New York Times*), massive national publicity and it prevailed in a closely watched and widely reported legal challenge to its business.[1] Aereo owns the federally registered trademark "Aereo" and has operated its business at the web site known as www.aereo.com since at least February 2012. In short, due to the quality of its business, its intensive promotional efforts and successes and its judicial success, Aereo has developed very substantial renown and goodwill associated with its mark "Aereo."

Since mid-2012, Defendants have embarked on a campaign to intentionally confuse and associate their Internet-based television service with the technology platform offered by Aereo. First, Defendants used as a trade name and promotional vehicle "barrydriller.com," misappropriating the name of prominent Aereo investor Barry Diller to facilitate Defendants' launch of Defendants' purportedly competing service. Defendants simultaneously adopted the corporate name "Aereokiller, LLC" to identify Defendants' company that was operating Defendants' allegedly competing service. This Court enjoined Defendants from their unlawful conduct

---

[1]       Certain broadcasters sued Aereo in federal court in New York and sought a preliminary injunction alleging that the Aereo technology enabled public performance. Aereo prevailed in that matter. In July 2012, the Court denied the injunction and found that Aereo did not violate the public performance copyright rights of plaintiffs. Aereo's legal success was widely reported in the media, generating considerable nationwide recognition and goodwill associated with the Aereo trademark.

with respect to Barry Diller.[2]

Defendants have now embarked on a new scheme.  In yet another deliberate effort to confuse and mislead the public, Defendants are now using "Aero" and "Aero.tv" (including a web site located at www.aero.tv) to identify their service, which Defendants claim competes with Aereo.

Seeking to unfairly capitalize on Aereo's judicial success and extraordinary positive publicity, but unable to use Barry Diller's name, Defendants devised a scheme to launch what they claim is a competing business called "Aero." Defendants' "Aero" service is offered on the "Aero.tv" website.  Defendants are now using a confusingly similar variation of Plaintiff's federally registered "Aereo" mark to deliberately confuse consumers and mislead the public into believing that Defendants are associated with Aereo.[3]

Aereo requests immediate injunctive relief to stop Defendants from using the names "Aero" or "Aero.tv" or any other confusingly similar mark to Plaintiff's mark "Aereo" for any commercial purpose, including to compete against Aereo during the pendency of this action.

## STATEMENT OF FACTS

### A.   Plaintiff Aereo

Since at least February 2012, Aereo has offered an innovative technology platform to consumers in the New York metropolitan area that provides them the ability to use remotely located equipment to access over-the-air broadcast television

---

[2]   See *Barry Diller v. Barry Driller, Inc.*, 2012 WL 4044732 (C.D.Cal. September 10, 2012).

[3]   In contrast to Aereo, Defendants' reputation in the market is extremely poor. For example, federal courts in New York and Los Angeles have issued injunctions against Defendants enjoining Defendants from offering their purported services. Accordingly, Defendants' efforts to mislead the public are not only likely to cause confusion, they are likely to tarnish and harm Aereo's reputation in the market and, accordingly, the goodwill associated with its mark.

1  via internet-enabled devices at low cost.  (Kanojia Decl. ¶¶ 4-5.)  Aereo's

2  customers use an individual antenna and DVR to receive, record and view over-the-

3  air broadcast signals and view their recordings on internet-enabled devices.

4  Essentially, Aereo allows customers to locate their home television equipment "in

5  the cloud" to receive the over-the-air local broadcast signals to which they are

6  entitled.  (Kanojia Decl. ¶ 4.)

7       Aereo indicated its intention to expand to twenty-two additional markets

8  across the country as of December 2013, and it is actively pursuing those expansion

9  plans.  (Kanojia Decl. ¶ 5.)  After this first phase of expansion, Aereo intends to

10  expand to additional markets across the United States.  (*Id.*)

11       **B.**    **Aereo's Marketing Efforts**

12       Aereo markets its business on its website at www.aereo.com.  The Aereo

13  website was launched with content in about February 2012.  That website, which is

14  available nationwide, contains marketing information, including photos, media

15  summaries, videos and text, all concerning the "Aereo" trademark.  Examples of

16  screen shots of the home page and certain screen shots from the "Aereo" website

17  are attached hereto as Exhibit 1.  (Kanojia Decl. ¶ 7, Exh. 1.)

18       In addition to its website, Aereo has launched a number of advertising

19  campaigns.  For example, Aereo has done massive online advertising, including,

20  without limitation, text ads and banner ads.  It has deployed over 200 million

21  impressions in Google text ads and over 55 million banner ads.  (Kanojia Decl. ¶ 8;

22  Exh. 2.)

23       Aereo also uses social media to promote its business and the "Aereo"

24  trademark.  Aereo has thousands of followers on its Facebook page and Twitter

25  feeds, both of which make prominent use of the "Aereo" mark.  (Kanojia Decl. ¶ 9;

26  Exhs. 3 and 4.)

27       Aereo also has participated in dozens of events ranging from large scale

28  conferences to local meet-ups, as well as trade shows and media events.  In

connection with such events, Aereo has provided promotional gear, such as sweatshirts, t-shirts and water bottles which prominently feature its "Aereo" mark. In addition, Aereo has deployed traditional advertising, including billboards, posters and kiosks, light panels, walls and display boards throughout the New York metropolitan area.  (Kanojia Decl. ¶¶ 10-11; Exh. 5.)

Aereo has attracted very substantial press attention.  There have been over 1900 stories written in the media about Aereo.  Many news reports have been highly enthusiastic about Aereo and its technology, including reviews in *The New York Times*, *The Wall Street Journal* and *Time* magazine.  (Kanojia Decl. ¶ 12; Exhs. 1 and 6.)

In addition to the advertising Aereo has initiated and the press attention it has received, there has been a massive amount of publicity about Aereo including product reviews, reporting on its judicial victory[4] and profiles of its Chief Executive Officer and board member, Barry Diller.  (Kanojia Decl. ¶ 12; Exh. 6.)

In light of the advertising and press coverage described above, Aereo has become a very well-known brand and has considerable goodwill associated with it.  A Google search yields more than 2.7 million "hits" that mention "Aereo, Inc." About 130,000 of those "hits" discuss Aereo's litigation success against the broadcast companies.  (Lee Decl. ¶ 12; Exh. 7.)  Through hard work, superior technology, widespread media coverage and extensive marketing efforts, Aereo has developed a reputation for excellence and has acquired very substantial renown and goodwill in the marketplace.[5]

_____

[4]     In March 2012, the major broadcasting companies sued Aereo for copyright infringement and sought to enjoin the operation of its business.  In July 2012, the court ruled in favor of Aereo and denied the broadcasting companies' motion for a preliminary injunction.  *See American Broadcasting Companies, Inc. et al. v. Aereo, Inc.*, 874 F.Supp.2d 373 (S.D.N.Y. 2012).

[5]     Examples of positive media reports on Aereo and its business include:
- "[One of the] 50 Best Websites of 2012" -- *Time* magazine, Sept. 18, 2012.

[_   footnote continued   _]

Aereo uses its "Aereo" mark, alone and together with its logo, in its advertising efforts.  Aereo has obtained a federal trademark registration in its "Aereo" word mark.  (Kanojia Decl. ¶ 15; Exh. 8.)

### C. **Defendants Alki David and Filmon.com**

Defendant Alki David is an individual who founded and is chief executive officer of Defendant FilmOn.com, Inc. ("FilmOn").  Defendants have for years have attempted to offer an internet television streaming service and they have devoted most of their efforts since mid-last year  to trying to compete against Aereo (which, of course, would be fine if they were proceeding on whatever merit exists in their own business rather than trying to free-ride on Aereo's renown and success).  However, federal courts in New York and Los Angeles have issued injunctions against Defendants, enjoining Defendants from offering their purported services.  In November 2010, certain broadcast companies obtained a temporary restraining order prohibiting FilmOn and its agents from using FilmOn's technology to enable consumers to access broadcast television programming.  *CBS Broad. Inc. v. FilmOn.com, Inc.*, 10 CIV. 7532 NRB (S.D.N.Y. Nov. 22, 2010). (Lee Decl. ¶ 2; Exh. 9.)  More recently, certain broadcasting companies obtained another injunction that prohibits Defendants from offering their services in the Ninth Circuit.[6]

---

[ . . . continued footnote . . . ]

- "[Aereo's ] video quality is startlingly good . . . .  If you are a fan of TV and want a better way to watch it on the go, Aereo is a pleasure." *The Wall Street Journal*, July 18, 2012.
- "MIT Technology Review Honors Aereo With Top Companies of 2013." http://www.2.technologyreview.com/tr50/2013.

[6]   In December 2012, Defendants were enjoined from operating their service in California. *See Fox Television Stations, Inc. v. BarryDriller Content Systems, PLC*, __F.Supp.2d__, 2012 WL 6784498 (C.D. Cal. Dec. 27, 2012).  Aereo has no idea what type of technology Defendants' purport to offer in either case since the findings of fact appear to rest solely on Defendants' conclusory representations, but the nature of their technology is irrelevant to this trademark case.

### D.   Defendants' Infringing Conduct Begins

Shortly after Aereo's July 2012 victory against the broadcasting companies, Defendants sought to capitalize on Aereo's litigation success.  In August 2012, Defendants used Aereo's name in its company name "Aereokiller," as well as the name of one of Aereo's prominent backers, Barry Diller, to launch a purportedly competing service.  Defendants called their new service "BarryDriller.com." Defendants announced to the press that "BarryDriller.com" was operated by a company with the corporate name "Aereokiller, LLC," that would directly compete against Aereo.  On August 24, 2012, this Court issued a Temporary Restraining Order and Order to Show Cause why a preliminary injunction should not issue.  On September 10, 2012, this Court entered a preliminary injunction ordering Defendants to cease their use of Barry Diller's name.  *See Diller v. Barry Driller, Inc.,* 2012 WL 4044732 (C.D. Cal. September 10, 2012).  In a nine-page decision, this Court ruled that Defendants are preliminarily enjoined from using the name of Barry Diller or any confusingly similar variation thereof.

In the both the *Diller* and *Fox* actions, Defendants filed certifications of interested parties.  In such certifications, Defendants represented to this Court that they had ceased using the corporate name "Aereokiller." (Lee Decl. ¶ 4; Exh. 10.) However, to date Defendants have failed to take any action to remove the "Aereokiller" name from the captions of either the *Diller* or *Fox* actions.  The failure of Defendants to remove the name "Aereokiller" from the court captions has caused the press to widely report "AereoKiller's" judicial defeats. (Lee Decl. ¶ 5; Exh. 11.)

### E.   Plaintiff's Request Defendants To Correct Their Corporate Name

On January 15, 2013, Aereo asked Defendants to stop identifying themselves as "Aereokiller" to avoid public confusion in the marketplace.  (Lee Decl. ¶ 3; Exh. 10.)  Defendants refused to comply with that request.  (*Id.*)

Instead, Defendants claimed in a complaint filed on February 7, 2013, that

1   one day earlier, on February 6, 2013, they had acquired rights in "Aero" from a

2   company that markets a "Hauppauge WinTV-Aero-M" mini-television antenna.

3   (Lee Decl. ¶ 6; Exh. 12)  This complaint was never served.  Upon learning of the

4   complaint, Aereo made further inquiry.  It found no use of the word "Aero" as a

5   trademark by Hauppagge.  It further discovered that the only use of "Aero" by

6   Defendants as of February 2013 was on a website that included an image of a

7   FilmOn mini-antenna dongle labeled not "Aero" but "Air."  (Lee Decl. ¶¶ 7 and 8;

8   Exhs. 13 and 14.)  The complaint filed by Defendants was and is frivolous and was

9   a direct response to the request from Aereo to follow through on their name change

10  from "Aereokiller."  It was also the first step in their most recent scheme to mislead

11  the public and trade off of Aereo's trademark.

### F.  Defendants Embark On Their Scheme To Confuse The Public

13      On March 1, 2013, Defendants issued a press release claiming that

14  Defendants were intending to spend $100 million to promote Defendants' service

15  using the name "Aero."  (Kanojia Decl. ¶ 16; Exh. 15.)  On information and belief,

16  they have begun launching television advertisements in, at least, the New York and

17  Washington, D.C., markets.  Defendants stated that they were launching a "world

18  wide TV ad campaign" starting in New York, which would be accompanied by

19  online, print and outdoor media.  (*Id.*)  Defendants also announced in this press

20  release that Defendants intended to advertise in six other cities in which Aereo had

21  previously announced its intent to expand, as well as 24 other cities. (*Id.*)

22      Defendants claimed for the first time in that press release that Defendants

23  were operating their own "Aero.tv" service.  Defendant David opined that "Barry

24  [Diller] should . . . turn over Aereo.com which by rights belongs to me anyway."

25  (Exh. 15.)

### G.  Defendants' Aero.tv Service

27      Defendants' "Aero.tv" website purports to offer consumers access to

28  broadcast television programming on their computers and other internet-enabled

devices.  The "Aero.tv" home page prominently features the word "Aero" in bold print in its upper left-hand corner.  (Lee Decl. ¶ 10; Exh. 16.)

The website purports to offer the same internet TV streaming services that are offered on "FilmOn.tv.com."  The Aero.tv home page states in its lower right hand corner that the site is a "FilmOn.TV Networks site."  (Lee Decl. ¶ 10; Exh. 16.)

Although purporting to offer online television streaming services, as of March 6, 2013, the "Aero.tv" site did not appear to function.  (Lee Decl. ¶ 11.) Aero also offers some original content featuring Kato Kaelin, as well as others. (Kanojia Decl. ¶ 19.)  The use of "Aero" to advertise this business is likely to confuse and mislead consumers and in addition cause them to believe that Aereo and "Aero" are associated.  Aereo does not wish to be associated with the Defendants in any way including, without limitation, their various judicial defeats, Mr. David's manner of advertising and operation, a website that does not function properly and the original content offered on the "Aero.tv" site.  (Kanojia Decl. ¶ 19.)

### H.    Defendants' Lack of Consent

No representative of Defendants has ever obtained permission from Aereo to use the "Aero" name to identify Defendants' business or website.  Plaintiff first learned of Defendants' commercial use of ""Aero" and "Aero.tv" on March 1, 2013, when Defendants issued the above described press release.  (Kanojia Decl. ¶ 18.)

### I.    Plaintiff's Irreparable Harm

If Defendants are not immediately stopped, their massive proposed advertising campaign which has been announced and has begun deployment will cause permanent and irreparable harm to the Aereo brand.  Defendants' actions infringe Aereo's trademark rights and are intended to and likely to mislead the public into believing that "Aero" is associated with Aereo.  Such confusion is

designed to attract consumers to Defendants' "Aero.tv" website and service, and to divert consumers from Aereo to Defendants' ostensibly competing business. Defendants' use of the "Aero" name and logo threatens to harm the extraordinarily valuable national goodwill that Aereo has developed in its marks.  Defendants' actions will cause Aereo to lose the ability to control how its marks are used in the marketplace.  (Kanojia Decl. ¶ 19.)  The goodwill Aereo has developed will be permanently damaged by Defendants' uncontrolled use of its name, and the damage to Plaintiff increases daily.

For these reasons, Aereo seeks a preliminary injunction and temporary restraining order to stop Defendants from using Plaintiff's marks to promote their business.

## ARGUMENT

### I.
### DEFENDANTS SHOULD BE ENJOINED FROM INFRINGING ON AEREO'S TRADEMARK RIGHTS

This Court should enter a preliminary injunction against Defendants if Plaintiff demonstrates:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent a preliminary injunction; (3) that the balance of hardships favors Plaintiff; and (4) that an injunction would be in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009).  A preliminary injunction should issue under these standards for the reasons described below.

### A.    Aereo Is Likely To Prevail On The Merits Of Its Trademark Infringement And False Association Claims

To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must show that (1) it has a valid, protectable trademark, and (2) defendant's use of the mark is likely to cause confusion.  *See* 15 U.S.C. § 1114; *Applied Info. Sciences Corp. v. eBay, Inc.,* 511 F.3d 966, 969 (9th Cir. 2007); *Power Balance LLC v. Power Force LLC,* 2010 WL 5174957, *2 (C.D. Cal. 2010).

To prevail on a false association claim, a plaintiff must show that defendants' actions are likely to deceive consumers as to defendants' association, sponsorship or approval of goods or services offered by plaintiff.  15 U.S.C. § 1125(a).

The key inquiry in both § 1114 and § 1125(a) cases is whether an appreciable number of consumers are "likely to be deceived or confused by the similarity of the marks."  *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 780 (1992); *Waits v. Frito-Lay, Inc.*, *supra*, 978 F.2d at 1107, 1111.  Likelihood of confusion is determined by weighing eight "factors" articulated by the Ninth Circuit. *DreamWerks Prod. Group, Inc. v. SKG Studio*, 142 F. 3d 1127, 1129 (9th Cir. 1998).[7]  However, "it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors," and a court "should not exercise excess rigidity in applying them."  *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

Here, relevant factors strongly favor a finding of a likelihood of confusion as discussed below.

### 1.    Defendants' Conduct Is Intentional.

Defendants have a history of attempting to blatantly capitalize on Plaintiff's mark to build their business.  In fact, Defendants have already been enjoined by this Court from using Mr. Barry Diller's name to create confusion in the marketplace between its business and Aereo.

This Court has already ruled that "[t]he evidence strongly suggests that Defendants intended to capitalize on Plaintiff's name and involvement with . . .

---

[7]    Those eight factors are (1) the strength of the mark; (2) the similarity of the marks; (3) the degree to which the services of the parties are related; (4) the similarity of the marketing channels used; (5) the degree of consumer care; (6) whether there is evidence of actual confusion; (7) whether the defendant's conduct is intentional; and (8) the likelihood that the parties will expand into competing product lines.  *Dreamwerks Products Group, Inc., supra*, 142 F.3d at 1129.

competitor Aereo." *Diller v. Barry Driller, Inc., supra,* 2012 WL 4044732 at *7. Defendants' selection of the term "Aero" is not a coincidence. There are an infinite number of names that Defendants could choose for their business but defendants have chosen, in this order, "Barry Driller," "Aereokiller," and now "Aero" in an unmistakable attempt to abrogate for itself Aereo's successes and goodwill. Defendants specifically chose the term "Aero" to free-ride off the goodwill associated with Aereo and its recent judicial success. Defendant's chose to call their service "Aero" with full knowledge that "Aero" was confusingly similar to "Aereo."[8] Moreover, Defendants are attempting to divert consumers to their competing business. Defendants' knowing adoption of a mark similar to Plaintiff's creates a presumption of intentional infringement. *Diller v. Barry Driller, Inc., supra,* at *7; *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991) (presumption of intentional infringement arises when defendant deliberately adopts plaintiff's mark to obtain advantage from plaintiff's goodwill.)

### 2. Plaintiff's Marks Are Strong.

Aereo's marks are both conceptually and commercially strong. Its marks are neither descriptive nor suggestive of the services Aereo offers, and are therefore conceptually strong. *M2 Software, Inv. V. Madacy Entertainment*, 421 F.3d 1073, 1080-81 (9th Cir. 2005).

Aereo's marks also are commercially strong because of its marketing efforts and media exposure. Aereo has spent more than $2 million promoting its marks, which are widely recognized by the public. (Kanojia Decl.¶ 6.) Aereo has been the subject of thousands of stories, including dozens of positive product reviews in

---

[8]      Defendants admitted in an unserved complaint filed in this Court on February 7, 2013, that "[t]he name 'Aero,' is substantially similar to the name "Aereo," and is therefore likely to mislead consumers into believing that there is an association between the two when in fact there is not." (Lee Decl. ¶ 6; Exh. 12, ¶ 20.)

publications such as *Time* magazine, *The Wall Street Journal* and *The New York Times* and millions of internet ads, website postings and comments in newspapers, magazines, blogs, etc.  (Kanojia Decl. ¶ 12; Exhs. 1 and 6.)  Aereo's online advertising has been viewed by the public hundreds of millions of times.  (Kanojia Decl. ¶ 8.)  Plaintiff's "commercial success, as shown by widespread media exposure and advertising expenditures," evidences a commercially strong mark. *Consolidated Cigar Corp. v. Monte Cristi De Tabacos,* 58 F.Supp.2d 188, 198 (S.D.N.Y 1999.)

Aereo's trademark rights were recently recognized by the Patent and Trademark Office, which issued a federal trademark registration in Plaintiff's "Aereo" word mark.  (*See* Kanojia Decl. ¶ 15; Exh. 8.)

Accordingly, Aereo has a strong mark under Ninth Circuit law.

### 3.     Defendants Are Using A Name Confusingly Similar To Aereo's Mark.

Similarity of marks is determined by evaluating "sight, sound and meaning" of marks as they are used in the marks' marketplace.  *Miss World (UK) Limited v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1450 (9th Cir. 1998).  "[T]he more similar the marks are in terms of appearance, sound and meaning, the greater the likelihood of confusion."  *Brookfield Communications*, *supra*, 174 F.3d at 1054.

The "Aereo" mark and the "Aero" name are identical with the exception of the deleted "e."  The last time the Defendants changed a letter in Barry Diller's name, this Court ruled:

> Plaintiff's name Barry Diller and "Barry Driller" . . . are almost identical sounding and appearing, with the exception of the additional "r" in Defendants' iteration, which has very little visual or auditory impact . . . [A] consumer encountering them may believe that Defendants' mark is simply a variant of Plaintiff's name.

*Diller v. Barry Driller, Inc., supra,* 2012 WL 4044732 at *6.

Defendants are once again employing the same tactics.  The terms "Aero" and "Aereo" are almost identical sounding and appearing, with the exception of the

1    deleted "e" in Defendants' iteration.  The deletion of the  "e" has very little visual

2    or auditory impact.  A consumer encountering Defendants' term "Aero" may

3    believe that "Aero is simply a variant of "Aereo."

4         The similarity of marks weighs heavily in favor of likely confusion.

5    *Dr. Seuss Enterprises, LP v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404-05

6    (9th Cir. 1997) (substantial similarity between plaintiff's marks and defendant's

7    infringing marks—"Dr. Seuss" and "Dr. Juice," respectively—favor likelihood of

8    confusion); *Diller v. Barry Driller, Inc., supra* ("Barry Diller" and "Barry Driller"

9    virtually identical, favoring likely confusion).

10              **4.      The Good And Services Are Related.**

11        For Lanham Act purposes, services are "related" if customers are "likely to

12   associate" two business lines.  *Dreamwerks Products Group, Inc., supra,* 142 F.3d

13   at 1131.  Here, Defendants claim the parties' are engaged in competing business

14   lines.  (Kanojia Decl. ¶ 16; Exh. 15.)  Judge Collins has already held that "[g]iven

15   the recent publicity surrounding . . . entry into internet-based broadcast

16   television . . . [by] Aereo, the 'goods' in this case are closely related."  *Diller v.*

17   *Barry Driller, Inc., supra,* 2012 WL 4044732 at *6.

18        This factor thus weighs strongly in favor of likely confusion.  *Id*.

19              **5.      The Same Marketing Channels Are Used.**

20        If parties market through the same channels, this favors a likelihood of

21   confusion.  *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d at 1135, 1151 (9th Cir.

22   2002).  Here, both Aereo and Aero market their technology platforms through

23   Internet websites, Internet marketing, traditional off-line marketing, as well as

24   social media such as Facebook and Twitter.  (Kanojia Decl. ¶¶ 9; Exhs. 3 and 4;

25   Lee Decl. ¶ 13; Exhs. 17 and 18.)  Significant use of similar internet marketing

26   channels favors a likelihood of confusion determination.  *Interstellar Starship*

27   *Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002); *Goto.com, Inc. v.*

28   *Walt Disney Co.*, 202 F.3d 1199, 1201 (9th Cir. 2000).  As this Court noted in

*Diller*:  In addition, both defendants use off line media including traditional advertising channels.

> Because they are competitors, Defendants' service also likely targets customers who might use Aereo's service . . . .  Moreover, Defendants and Aereo operate side-by-side in . . . New York . . .  Plaintiff's activities promoting Aereo and Defendants' activities promoting their competing service . . . [suggests] consumer confusion is likely.

*Diller v. Barry Driller, Inc.*, *supra*, 2012 WL 4044732 at *6.

### 6.     The Degree Of Consumer Care Favors A Finding Of Likely Confusion.

Consumers generally exercise less care when considering low cost goods or services.  *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 634 (9th Cir. 2005).  Aereo's technology platform is offered at a low cost.  (Kanojia Decl. ¶ 4.)  Defendants advertise their services as "free."  (Kanojia Decl. ¶ 16.)

Consumers using search engines to search for "Aereo" or "Aero" are less likely to be careful because of the low cost of the two services (even without that it would be easy to be led to the wrong cite by a typo).  This low degree of care makes confusion more likely.

Even if consumers might realize after being diverted to Defendants' website that this is definitely not Aereo, this is irrelevant to the initial interest confusion that caused the consumer to go to Defendants' website in the first place.  *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1057-58 (9th Cir. 1999); see also, *Diller v. Barry Driller Inc.*, *supra*, 2012 WL 4044732 at *3 (explaining , based on *Brookfield*, that "confusion can arise from use of a confusing domain name, even if the confusion is eliminated upon viewing the website found there").  Further, consumers could likely believe that the two business are associated which would cause tremendous damage to Aereo's reputation for quality, legal compliance and its goodwill in the marketplace.

### 7.     Actual Confusion Is Not Needed.

Since the "Aero" situation has just occurred, Plaintiffs are not currently aware of instances of actual confusion but it is extremely likely that confusion will occur in light of all of the facts set forth above.  Indeed, Defendants are banking on it.  In any event, actual confusion is not needed to issue a preliminary injunction for a Lanham Act violation.  *Dr. Seuss Enterprises, LP v. Penguin Books USA, Inc.*, *supra*, 109 F.3d at 1405 (affirming preliminary injunction even though no evidence of actual confusion was presented).  This is so "because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make[] its absence generally unnoteworthy." *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006).  That is especially true when the infringing use has only occurred for a brief period.  "[T]he lack of proof of actual confusion is not relevant here, when Defendants' use of the mark has been short-lived." *Diller v. Barry Driller, Inc., supra,* 2012 WL 4044732 at *6.

### 8.     The Parties Are Already Operating In The Same Or Similar Product Lines.

The Court has held that "Aereo and Defendants already offer their competing services in New York." *Diller v. Barry Driller, Inc., supra*, at *7.  The parties have also each announced that they both intend to operate in the Chicago, Dallas, Miami, Washington, D.C., and Denver markets this year.  (Kanojia Decl. ¶¶ 5 and 16; Exh. 14.)  The Court concluded that the parties' overlapping geographic markets "strongly suggests that a likelihood of confusion exists here." *Diller v. Barry Driller Inc. supra*, at *7.

### 9.     Under The Anti-Dissection Doctrine, Defendants Cannot Acquire Rights In The Term "Aero" From A Licensor Who Uses Only The "Hauppauge WinTV Aero-M" Product Name.

Aero has alleged in a yet unserved complaint on file in this Court that on February 6, 2013, it acquired rights in "Aero" from a company that markets a product known as the "Hauppauge WinTV Aero-M" mini antenna.  (Lee Decl. ¶ 6;

Exh. 12.)  Aereo has not been able to uncover any evidence that the licensor has ever used the term "Aero" separate and apart from the entire, long  product name. (Lee Decl. ¶ 7.)  Furthermore, Aereo has not located any evidence that the licensor used the phrase "Aero" instead of the phrase "Aero-M." (*Id*.)  Defendants have dissected the name "Hauppauge WinTV Aero-M" to pluck out the term "Aero."

However, if any trademark rights are associated with "Hauppauge WinTV Aero-M" ( which Plaintiffs dispute) it does not create rights in the word "Aero." The Ninth Circuit has held that under the "anti-dissection" doctrine, trademark law does not permit Defendants, or Defendants' licensor, to claim rights in a single component of a mark.  *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) "[U]nder the anti-dissection rule, the validity and distinctiveness of a composite trademark is determined by reviewing the trademark as a whole, as it appears in the marketplace."  *Id*.  "It is incorrect to compare marks by eliminating portions thereof and simply comparing the residue."  *China Healthways Institute, Inc. v. Wang*, 491 F.Ed 1337, 1340 (Fed. Cir. 2007).

Many courts in this circuit have rejected arguments that an alleged mark owner should be able to dissect and analyze only a component of a mark to determine its trademark rights or compare its mark with another's.  *See, e.g., James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, 2013 WL 655314 (C.D. Cal. Feb. 21, 2013) (applying the anti-dissection rule and finding that "KDZ Bruxer" was not confusingly similar to "BruxZir"); *Monster, Inc. v. Dolby Laboratories Licensing Corp.*, 2013 WL 367160 (N.D. Cal. Jan. 29, 2013) (citing with approval the anti-dissection rule to hold that "the theory that one can sever the different elements of a design and analyze them separately to determine whether the mark as a whole is protectable is contrary to the law of the Ninth Circuit"); *Playmakers, LLC v. ESPN, Inc.*, 297 F.Supp.2d 1277 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004) ("[W]hat is critical is the overall appearance of the mark as used in the marketplace, not a deconstructionist view of the different

1     components of the marks").

2        Here, Plaintiff's "Aereo" mark is not confusingly similar in sight, sound and

3     meaning to a "Hauppauge WinTV Aero-M." There is virtually nothing similar

4     about them. Many courts have found marks more arguably similar than "Aereo"

5     and "Hauppauge WinTV Aero-M" to not be confusingly similar. For example,

6     marks such as "Bank in a Billfold" and "Bank in a Wallet," "Boston Tea Party"

7     and "Boston Sea Party," "Bowflex" and "Body Flex," and "Titan" and "Vantage

8     Titan," were found to be sufficiently dissimilar to preclude confusion as a matter of

9     law.[9] Defendants cannot dissect "Aero" from their composite "mark" and claim

10     superior rights in that single word. Nor can Defendants avoid the confusing

11     similarity caused by their belated use of "Aero" alone based on those holdings.

12        Further, Defendants did not use "Aero" alone to market their products or

13     services before February 2013. Such use by Defendants was long after Aereo had

14     acquired its trademark rights. (Kanojia Decl. ¶ 15; Exh. 8.) Defendants' belated

15     use of the term "Aero" gives it no rights to infringe Aereo's registered and common

16     law marks. It makes them the clear and obvious infringer.

17        Finally, the circumstances surrounding Defendants' recent acquisition of

18     their purported "Hauppauge WinTV Aero-M" mark really just demonstrates

19     Defendants' intent to infringe Aereo's trademark rights. Defendants purposefully

20     chose the "Hauppauge WinTV-Aero-M" name so they could try to extract "Aero"

21     from it and copy Plaintiff's "Aereo" mark. Such actions demonstrate inequitable

22     conduct that favors an injunction. See *Seed Services, Inc., v. Winsor Grain, Inc*.

23     868 F.Supp.3d. 998, 1005 (E.D. Cal. 2012) (defendant's acquisition of an

24     Australian mark to copy a U.S. mark evidenced inequitable conduct that favored an

25

26    [9]      Other examples of dissimilar marks include "Accutron" and "Unitron,"
"Prozac" and "Herbrozac," "Toys "R" Us" and "Kids 'r' Us," "Chloraprep" and

27    "Chlorascrub," along with many others. *See generally*, J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition* § 23:57 (4th ed.), and cases cited

28    therein.

injunction.)

### B. Plaintiff Will Suffer Irreparable Harm If An Injunction Does Not Issue

#### 1. Irreparable Harm Should Be Presumed.

The Ninth Circuit's longstanding rule is that a likelihood of success on the merits of a Lanham Act claim establishes a presumption of irreparable harm for preliminary injunction purposes. See *Brookfield*, *supra*, 174 F.3d 1066.[10] However, a preliminary injunction should issue even if this Court does not apply such a presumption, because Plaintiff has already suffered and will continue to suffer irreparable harm without an injunction, as described below.

#### 2. Actual Harm Will Continue Unless An Injunction Issues.

Aereo has worked long and hard to develop a nationally recognized brand associated with quality. Association with the Defendants' use of "Aereokiller" (even as only a business versus trade name) has already and will continue to tarnish Defendants' brand. Defendants' newest scheme to simply use a mark as close as possible to Aereo as a brand will likely confuse consumers and cause very severe harm to Aereo's reputation and goodwill. Defendants' actions have caused Aereo to lose the ability to control its mark by associating it with a company and content

---

[10]    The Ninth Circuit recently clarified that irreparable harm is no longer presumed in the patent and copyright infringement settings, based on recent Supreme Court rulings. See *eBay Inc. v. Merc Exchange LLC*, 547 U.S. 388, 393 (2006); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011).

It is unclear whether the presumption of irreparable harm still exists in Lanham Act actions in this Circuit. One panel decision in a published decision applied the presumption to a Lanham Act case after the Supreme Court in *Winter*, *supra*, articulated the four factors applicable to a preliminary injunction motion. *Cf. Marlyn*, *supra*, 571 F.3d at 877. However, another panel in an unpublished decision approved a district court decision that rejected the presumption. *CytoSport, Inc. v. Vital Pharms.*, 348 Fed.Appx. 288, 289 (9th Cir. 2009), affirming *CytoSport v. Vital Pharms., Inc.*, 617 F.Supp.2d 1051 (E.D. Cal. 2009).

As *Marlyn* was a reported Lanham Act case that applied the presumption of irreparable harm after *Winter*, while *CytoSport* is an unpublished decision, the presumption of irreparable harm should continue to apply here.

1  with which it does not wish to be associated, and over which it has no control.  The

2  public's opinion, attitude and impression of Aereo will likely be irreparably harmed

3  by Defendants' unauthorized services or advertising in such circumstances.  That

4  harm will increase every day the misconduct is allowed to continue, and the

5  goodwill associated with Aereo's mark will likely be permanently damaged through

6  such efforts.  Such harm is real, but difficult to quantify.  As another district court

7  recently observed:

8        In trademark cases, courts have found irreparable harm in
       the loss of control over a business' reputation, a loss of
9        trade and a loss of goodwill.  Trademarks serve as the
       identity of their owners and in them [?] resides the
10       reputation and goodwill of their owners.  Thus, if another
       person infringes their marks, that person borrows the
11       owner's reputation, whose quality no longer lies within
       the owner's control.  A trademark owner's loss of ability
12       to control his marks, thus, creates potential for damage to
       his reputation.
13

14  *Seed Services, Inc. v. Winsor Grain, Inc.*, *supra*. 868 F.Supp.2d at 1005 (holding

15  that loss of control of business reputation established irreparable harm for

16  preliminary injunction purposes).

17      As this Court noted in *Diller v. Barry Driller, Inc.*:

18       In this case, Defendants have taken from Plaintiff . . . [its]
       ability to control the value of . . . [its] name by associating
19       it with a service offered by Defendants that directly
       competes with Aereo. . . [C]onsumers will likely confuse
20       Defendants' service with Plaintiff['s] . . . and may
       therefore utilize Defendants' service over Aereo,
21       believing it is a service supported by Plaintiff.  That
       creates a significant risk of irreparable harm to Plaintiff's
22       reputation and goodwill . . . .

23  *Diller v. Barry Driller, Inc., supra*, at *9.

24      The irreparable harm Aereo is suffering supports entry of a preliminary

25  injunction.

26  **C.    The Balance Of Hardships Favors Plaintiff**

27      Defendants' infringing activities violate Aereo's Lanham Act rights, by

28  diverting consumers and causing injuries that are irreparable as described above.  In

contrast, any inconvenience to Defendants will be purely economic and almost certainly minimal because Defendants only recently began using the "Aero" mark that infringes Plaintiff's marks. *See Diller v. Barry Driller, Inc., supra,* at *10. Most importantly, "[A] defendant who knowingly infringes a [mark] cannot complain of the harm that will befall it when properly forced to decease from its infringing activities." *Cadence Design Sys. v. Avant Corp.*, 125 F.3d 824, 829 (9th Cir. 1997). Given "the probable outcome of this action, this is a loss which [Defendants] may justifiably be called upon to bear." *Corning Glass Works v. Jeannette Glass Co.*, 308 F.Supp. 1321 (S.D.N.Y. 1970), *aff'd* on the opinion below, 432 F.2d 784 (2d Cir. 1970).

### D. The Public Interest Favors An Injunction

As this Court held in the *Diller* case, "[a]n injunction to prevent intentional trademark infringement not only protects the plaintiff, but protects the public from trademark confusion." *Diller v. Barry Driller, Inc., supra,* at *10. The public interest is furthered by issuance of a preliminary injunction to prevent confusion in the marketplace. One of the essential purposes of trademark law is to protect the consuming public from being misled as to the source of goods or services purchased. *Seed Services Inc.*, *supra*, 868 F.Supp.2d at 1005. As the court in *Corning Glass Works* noted:

> While Plaintiff is injured when consumers purchase [Defendant's merchandise] believing it to be [Plaintiff's merchandise], consumers too are directly being victimized. An injunction is thus in the public interest; only if the distribution of [Defendant's goods] is stopped can further fraud be avoided.

*Corning Glass Works*, *supra*, 308 F.Supp. at 1328.

Here, Defendants' use of Aero," "Aero.tv," and the "Aero logo" are confusingly similar to Plaintiff's "Aereo" marks. Such use by Defendants will mislead consumers who believe they are about to purchase a service endorsed or provided by Aereo. Instead, they will be diverted to purchase a service offered by

1  another company that is ostensibly competing with Aereo.  The public interest is

2  furthered by preventing such confusion.  *Diller v. Barry Driller, Inc., supra,* at *10.

3  **II.**

4  **THIS COURT SHOULD IMMEDIATELY RESTRAIN**
   **DEFENDANTS FROM VIOLATING PLAINTIFF'S RIGHTS**

5        In addition to describing the requirements for entry of a preliminary

6  injunction, Federal Rule of Civil Procedure 65 permits issuance of an *ex parte*

7  temporary restraining order when necessary to prevent "immediate and irreparable

8  injury, loss or damage."  Fed.R.Civ.P. 65(b).  Aereo has shown infringement and

9  irreparable injury as described above.

10       The Defendants have launched the campaign described in their press release.

11  Every day that Defendants are allowed to improperly associate Defendants'

12  business with Aereo further damages Aereo's goodwill and the excellence

13  associated with its mark.  It is respectfully submitted that an immediate temporary

14  restraining order should be entered pending a hearing on Plaintiff's application for a

15  preliminary injunction."[11]

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25

26

27  _____

   [11]       In compliance with the local rules, Plaintiff has notified Defendants of the
28  present application.  (Lee Decl. ¶¶ 14-17; Exh. 19 and 20.)

1

## CONCLUSION

2       For the foregoing reasons, Plaintiff respectfully requests that its ex parte

3  application be granted.

4       Dated:  March 7, 2013

5                     Respectfully submitted,

6                     MANATT, PHELPS & PHILLIPS, LLP
                         ROBERT H. PLATT

7                     MARK S. LEE
                     SETH REAGAN

8

9                   By:  /s/  Robert H. Platt

10                    Robert H. Platt
                    *Attorneys for Plaintiff*

11                    AEREO, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF CHAITANYA "CHET" KANOJIA

I, Chaitanya "Chet" Kanojia, declare:

1.      I am the founder and Chief Executive Officer of Aereo, Inc. ("Aereo"). This declaration is based on my personal knowledge and belief.  I am an individual who is over 18 years of age.

**Background**

2.      I hold a Master's Degree in Computer Systems Engineering from Northeastern University and a Bachelor's Degree in Mechanical Engineering from the National Institute of Technology in Bhopal, India.  I hold more than 14 patents in fields including data communications systems, computer systems and robotics.

3.      Prior to founding Aereo, I was the founder and Chief Executive Officer of Navic Networks, Inc. ("Navic").  Navic started in 1999 as a small Massachusetts-based company providing television advertising and measurement technology.

**Aereo And Its Business**

4.      Aereo provides technology—essentially a remote antenna and a remote digital television recorder ("DVR")—that allows consumers to access local television broadcasts available on the public airwaves, to create unique copies of the content for their personal use, and to play back their own unique recordings to their Internet-enabled viewing devices including, for example, televisions, tablets, laptop computers, or smart phones (the "Aereo Technology").  Essentially,, Aereo allows customers to locate their home television equipment "in the cloud" to receive the over-the-air broadcast signals to which they is entitled.  Aereo does this at low cost, offering up to one hour per day free, as well as plans from $1 per day to $80 per year.

5.      Aereo presently offers its services only in the New York metropolitan area which includes parts of Connecticut, New Jersey and Pennsylvania.  However, In January 2013 Aereo announced its intent to expand into 22 different cities across

the United States, namely in Boston, Massachusetts; Miami, Florida; Austin, Texas; Atlanta, Georgia; Chicago, Illinois; Dallas, Texas; Houston, Texas; Washington, D.C.; Baltimore, Maryland; Detroit, Michigan; Denver, Colorado; Minneapolis, Minnesota; Philadelphia, Pennsylvania; Pittsburgh, Pennsylvania; Tampa, Florida; Cleveland, Ohio; Kansas City, Kansas and Missouri; Raleigh-Durham, North Carolina; Salt Lake City, Utah; Birmingham, Alabama; Providence, Rhode Island; and Madison, Wisconsin.  While this is the first phase of Aereo's expansion, Aereo plans further expansion throughout most areas in the United States.

**Aereo's Promotional Efforts And Goodwill**

6.     Aereo formally launched the "Aereo" technology platform and business in February 2012.  Aereo has aggressively promoted its business and its "Aereo" marks since that time.  It has spent over $2 million to date in advertising and promotional efforts.

7.     The Aereo website was launched with content in about February 2012.  That website, which is available nationwide, contains marketing information, including photos, media summaries, videos and text, all concerning the "Aereo" trademark.  Examples of screenshots of the home page and certain screenshots from the "Aereo" webpage are attached as **Exhibit 1**.

8.     In addition to its website, Aereo has launched a number of advertising campaigns.  For example, Aereo has done a massive amount of online advertising, including, without limitation, text ads and banner ads.  We have deployed over 200 million impressions in Google text ads and over 55 million banner ads.  True and correct examples of banner ads, showing prominent use of the "Aereo" mark, are attached as **Exhibit 2**.

9.     Aereo has also used social media to promote its business and the "Aereo" trademark.  Aereo has thousands of followers on its Facebook page and Twitter feeds, both of which make prominent use of the "Aereo" mark.  True and correct copies of its Facebook and  Twitter pages are attached as **Exhibits 3** and **4**.

10.     Aereo also has participated in dozens of events ranging from large scale conferences to local meet-ups, as well as trade shows and media events.  In connection with such events, Aereo has provided promotional gear, such as sweatshirts, t-shirts and water bottles which prominently feature its "Aereo" mark.

11.     In addition, Aereo has deployed traditional advertising, including billboards, posters and kiosks, light panels, walls and display boards throughout the New York metropolitan area.  Examples of this advertising are attached as **Exhibit 5**.

12.     Aereo has attracted very substantial press attention and publicity.  There have been over 1900 stories written in the media about Aereo, including product reviews, reporting on its judicial victory and profiles of its Chief Executive Officer and board member, Barry Diller.  Many news reports have been highly enthusiastic about Aereo and its technology, including reviews in *The New York Times*, *The Wall Street Journal* and *Time* magazine.  Attached as **Exhibit 6** are true and correct copies of several examples of those news reports.

13.     In light of the advertising and press coverage described above, Aereo has become a very well-known brand and has considerable goodwill associated with it.

14.     Aereo has acquired an excellent reputation in the marketplace due to its innovative technology and business, the quality of its technology, and its marketing efforts.  Aereo works hard to maintain the quality of its technology platform, its service to its customers, and its reputation in the marketplace.  All of those efforts have generated tremendous goodwill in the Aereo brand.

**Aereo's Trademark Rights**

15.     Aereo's goodwill is symbolized by its trademark "Aereo."  Aereo has applied for and obtained a federal trademark registration for "Aereo."  A true and correct copy of that trademark registration is attached as **Exhibit 8.**  Aereo's word

mark has come to be widely recognized as symbolizing Aereo, its business, and the excellence of its products.

**Defendants' Announcement Of Their "Aero" Service**

16.     On March 1, 2013, I learned of a press release in which Mr. Alki David and FilmOn.com announced that they were going to spend $100 million dollars to advertise their "free" online TV streaming services.  A true and correct copy of that press release is attached as **Exhibit 15.**  Defendants announced in that press release that they were planning to advertise in New York, where Aereo does business, as well as in other markets into which Aereo plans its first phase expansion.  Those markets are Chicago, Dallas, Miami, Washington, D.C., and Denver.  Mr. Alki David is quoted in the press release as describing Defendants' own "white label version" of Defendants' service, which they call "Aero.tv." Mr. David was quoted as saying that Mr. "Barry [Diller] should quit while he's still a little relevant and turn over Aereo.com which by rights belong to me anyway!" *See* **Exhibit 15**.

17.     That March 1, 2013 press release was the first time I had heard that Defendants were operating an "Aero.tv" service.  That same day I confirmed that Defendants were offering their streaming TV services on an "Aero.tv" website.  I was not previously aware of any commercial use by Defendants of the "Aero" name to promote their services or to operate an "Aero.tv" website.  To the best of my knowledge, no one else at Aereo knew of any previous commercial use of that name by Defendants.

18.     Defendants have never asked me or anyone else at Aereo for permission to use "Aero" or "Aero.TV" to promote Defendants' business.

**The Harm To Aereo From Defendants' "Aero" Service**

19.     Aereo has nothing do to with Defendants' "Aero" business or "Aero.tv" website, and we would not wish to be associated with it in any way.  We have no ability to control what defendants do with the business that operates under

1   those confusingly similar names. Aereo has no ability to control the quality of that
2   company's goods or services, its interaction with the consumers, or anything else
3   about it. I understand that Defendants offer certain content on their website, mainly
4   original content featuring Kato Kaelin and others. That content is not offered by
5   Aereo, and Aereo does not wish to be associated with it. I also understand that as
6   of March 6, 2013, the "aero.tv" website was not functioning. Anyone who visits
7   "Aero.tv" because they mistakenly believe Aereo is associated with it will be
8   misled and disappointed. Anyone who has an unsatisfactory experience with
9   "Aero.tv" could hold Aereo responsible for it. Aereo wants its name and marks
10  associated only with its own business, over which it has control.

11      20.      Aereo has worked very hard to develop reputation for quality in the
12  marketplace as described above, and I believe that it has succeeded in that effort.
13  Defendants' unauthorized use of the "Aero" and "Aero.TV" names will likely
14  permanently harm the goodwill associated with Aereo's marks. The threat of that
15  harm increases every day that Defendants are allowed to continue to use
16  confusingly similar variations on Aereo's name to promote a business over which
17  Aereo has no control.

18      I declare under penalty of perjury under the laws of the United States that the
19  foregoing is true and correct. Executed this 7th day of March, 2013, in Newton,
20  Massachusetts.

21
22                          Chaitanya "Chet" Kanojia
23
24
25
26
27
28

## DECLARATION OF MARK S. LEE

I, Mark S. Lee, declare:

1.      I am a partner at Manatt, Phelps and Phillips, LLP, and am a member of the California Bar.  I have been admitted to practice in this Court since 1981.  I serve as counsel of record for Plaintiff Aereo, Inc., in this action.  I make this declaration in support of Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause re a Preliminary Injunction.  I have personal knowledge of the following facts and, if called upon as a witness, I could and would competently testify thereto.

2.      In November 2010, certain broadcast companies obtained a temporary restraining order prohibiting Defendant FilmOn.com, Inc., and its agents from using FilmOn's technology to enable consumers to access broadcast television programming.  I obtained a copy of that temporary restraining order from the Westlaw online database.  A true and correct copy of that temporary restraining order is attached hereto as **Exhibit 9**.

3.      On January 15, 2013, this office sent a letter to Defendants on behalf of Aereo, Inc., requesting that Defendants stop identifying themselves as "Aereokiller" in order to avoid public confusion in the marketplace.  Defendants have so far refused to comply with that request.  A true and correct copy of that letter is attached as **Exhibit 10.**

4.      The Court will note that **Exhibit 10** has attached to it several "certifications of interested parties."  In those certifications, Defendants represented to this Court that they ceased using the corporate name "Aereokiller."  I obtained true and correct copies of those documents from the Westlaw database and attached them to that letter.

5.      The failure of Defendants to remove the name "Aereokiller" from court captions has caused the press to widely report "AereoKiller's" judicial

defeats.  A true and correct copy of the first page of Google search results for the terms "Aereokiller" and "injunction" are attached hereto as **Exhibit 11**.

6.     I am informed and believe that Defendants filed a complaint in this Court on February 7, 2013, in which they claimed that one day earlier—on February 6, 2013—they had acquired rights in "Aero" from a company that markets the "Hauppauge WinTV-Aero-M" mini-television antenna.  I obtained a copy of that complaint from the Westlaw online database.  A true and correct copy is attached hereto as **Exhibit 12**.

7.     I have conducted an Internet search of "Hauppauge" and the "Hauppauge WinTV Aero-M" product.  True and correct copies of images of that product is attached as **Exhibit 13.**  I have not been able to uncover any evidence that the licensor of "Hauppauge WinTV Aero-M" ever used the term "Aero" to promote its products or business separate and apart from the entire, long product name.  Furthermore, I could not locate any evidence that "Hauppauge" was ever used the phrase "Aero" instead of the phrase "Aero-M."

8.     Internet research indicates that Defendants offered that product using the name "Film On Air" before February.  True and correct copies of images of that product is attached as **Exhibit 14**.  I am informed and believe that at some time after February 7, 2013, Defendants changed the name of their product to "FilmOn.TVAero," on internal webpages of the "FilmOn.TV" website.  However, I could discover no advertising for that product.  I could not find any other use of "Aero" before March 1, 2013.

9.     On March 1, 2013, I read a press release that I am informed and believe was issued by Defendants.  A true and correct copy of that press release is attached as **Exhibit 15**.

10.     On March 6, 2013, I visited the "Aero.tv" website.  I observed that the Aero.tv homepage prominently featured the word "Aero" in bold print in its upper left-hand corner.  In its lower right-hand corner, there is a statement that Aero.tv is

a "FilmOn.TV Networks site."  A true and correct copy of a screenshot from the Aero.tv homepage as it appeared on March 6, 2013, is attached hereto as **Exhibit 16**.

11.    As of March 6, 2013, the Aero.tv site did not appear to function properly.  Rather than a streaming television signal, the homepage perpetually displays a gray screen with the word "Loading."  Underneath the gray screen are the words "Report Broken."  *See* **Exhibit 16**.

12.    On March 6, 2013, I conducted a Google search of the term "Aereo, Inc."  The search results included over 2.7 million hits.  On March 6, 2013, I conducted a Google search of the terms "Aereo" and "injunction."  The search results included about 130,000 hits.  True and correct copies of the first pages of those search results are attached as **Exhibit 7**.

13.    On March 1, 2013, I directed that an internet search be conducted for social media accounts associated with Defendants.  I discovered that Defendants use both Facebook and Twitter to market their technology platforms.  True and correct copies of pages from these social media accounts as they appeared on March 1, 2013, are attached hereto as **Exhibit 17** and **Exhibit 18**.

14.    In compliance with local rules, this office notified Defendants of the present application.  On March 6, 2013, at approximately 6 p.m., I called and left a message with Mr. Jaime Marquart of the firm  Baker & Marquart, advising him that Aereo, Inc., had filed suit against Mr. Alki David and FilmOn.Com, Inc., for trademark infringement.  I also advised Mr. Marquart that Aereo, Inc., would provide him with courtesy copies of the complaint, as well as true ex parte papers when they were complete.

15.    I followed up by sending the email attached as **Exhibit 19** to Mr. Marquart and his partner, Ryan Baker.

16.    I contacted those gentlemen because they represented Mr. David and FilmOn.Com in the case of *Barry Diller v. Barry Driller, Inc.*, Case

No. CV-07200 (ABC), and also are listed as counsel of record for *FilmOn.Com, Inc. v. Aereo, Inc.*, Case No. CV-00912 (complaint filed February 11, 2013).

17.    In response to my call and email, I received two email responses from Mr. Ryan Baker.  True and correct copies of those responses are attached as **Exhibit 20.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and this declaration was executed on March 7, 2013 in Los Angeles, California.


/s/  Mark S. Lee
Mark S. Lee